IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Rosa A.D.B., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:21-cv-50042 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Martin J. O'Malley, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Rosa A.D.B. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

**A. Procedural History**

  On December 1, 2017, Rosa A.D.B. ("Plaintiff") filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. R. 14. Both applications alleged a disability onset date of October 16, 2017. *Id.* The Social Security Administration ("Commissioner") denied her applications on April 19, 2018, and upon reconsideration on August 17, 2018. *Id.* On August 1, 2019, a video hearing was held by Administrative Law Judge ("ALJ") Patricia Kendall where Plaintiff appeared and testified. *Id.* Steven Golub, M.D., an impartial medical expert, and Linda M. Gels, an impartial vocational expert ("VE"), also appeared and testified. *Id.* On December 31, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income. R. 14-30. After the Appeals Council denied Plaintiff's request for review on November 2, 2020, Plaintiff filed the instant action. Dkt. 1.

**B. ALJ's Decision**

  In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 16, 2017. R. 17. At step two, the ALJ found that Plaintiff had the

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c); Dkt. 8.

1

following severe impairments: status post right rotator cuff repair, osteoarthritis of the knees and left hand, fibromyalgia, and diabetes mellitus.[2] *Id.* The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic activities. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. R. 20.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following limitations: she can frequently push or pull; she can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs; she can frequently balance but can occasionally stoop, crouch, kneel, and crawl; she can occasionally reach overhead with the non-dominant right upper extremity and she can frequently reach laterally and in front with the non-dominant right upper extremity; she can frequently handle, finger, and feel with the dominant left upper extremity; and she should avoid all exposure to the use of dangerous moving machinery and unprotected heights. R. 21-22. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as an inspector/hand packager and thus did not need to proceed to step five. R. 29; 20 CFR 404.1520(f). Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from October 16, 2017, through the date of the decision, December 31, 2019. R. 29.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

---

[2] The ALJ listed Plaintiff's hypertension, headaches, plantar fasciitis, bursitis of the hip, and carpal tunnel syndrome status post release surgery as non-severe. R. 17.

# DISCUSSION

Plaintiff challenges the ALJ's decision on the grounds that the RFC was not supported by substantial evidence. Pl.'s Mot. at 7. Specifically, Plaintiff argues the ALJ "selectively credited evidence," impermissibly played doctor, and failed to provide a proper analysis of Plaintiff's subjective symptoms. *Id.* at 8. As detailed below, the Court finds that the ALJ's decision was supported by substantial evidence.

At the outset, the Court notes that in taking issue with the ALJ's evaluation of the evidence, Plaintiff does not argue that the ALJ ignored certain evidence in favor of disability. Instead, Plaintiff takes issue with the ALJ's weighing of the evidence in the record, arguing that the evidence shows more significant shoulder issues than accepted by the ALJ. Pl.'s Mot. at 8-10. This argument is nothing more than an invitation for this Court to reweigh the evidence which the Court cannot and will not do. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("When [the plaintiff] criticizes the ALJ's analysis of her daily functioning, her good and bad days, and her pain, she is . . . inviting us to reweigh the evidence.").

## A. Evaluation of Medical Opinions

Plaintiff first questions the weight given by the ALJ to medical opinions in the record, specifically arguing that the ALJ's rejection of Dr. Golub's[3] conclusions was improper. *Id.* at 8-9. Specifically, Plaintiff argues that her RFC should have included further right shoulder restrictions but did not because of this improper rejection of the medical expert's opinion. *Id.*

The ALJ permissibly rejected Dr. Golub's conclusions. For claims filed on or after March 27, 2017, the opinions of treating physicians are not entitled to "any specific evidentiary weight, including controlling weight." 20 C.F.R. § 404.1520c(a). An ALJ is required to consider the persuasiveness of medical opinions based on several listed factors, including supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Of these factors, supportability and consistency are the two most important for the ALJ to consider. 20 C.F.R. § 404.1520c(b)(2). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (internal citations omitted) (quoting *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)). Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion, and consistency assesses how a medical opinion squares with other evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The ALJ must explain how he considered the supportability and consistency factors for each medical opinion but is not required to explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). In discussing the factors of supportability and

---

[3] The medical expert, Dr. Golub, is referred to as Dr. Gallup in the administrative hearing transcript.

consistency, the ALJ must build a logical and accurate bridge between evidence and conclusions to enable meaningful review. *See e.g., Evonne R. v. Kijakazi*, No. 20 C 7652, 2022 WL 874650, at *5 (N.D. Ill. Mar. 24, 2022) (citing *Grotts v. Kijakazi*, 27 F.4th 1273 (7th Cir. 2022); *Gestner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018)).

Here, the ALJ analyzed the medical expert's opinion as follows:

> Dr. Golub's opinion is generally not persuasive. The opinion itself was at times internally inconsistent as he noted that there were no severe medically determinable impairments and then indicated functional limitations. He noted that the limitations, mainly the manipulative limitations, were based on his general experience but did not find specific support for this in the record, although the change in testimony to occasional reaching was based on Dr. Jasek's more recent treatment notes that mirror examination findings from December 2017 and not clearly seen elsewhere by other providers. While I agree that the record supports exertional limitations to a range of light work, this finding is not based on the medical expert's testimony but on the totality of the record, including opinion evidence from the reconsideration level medical consultant. I also accepted the environmental limitations given the claimant's combined impairments, including uncontrolled diabetes mellitus, but this does not reflect that the medical expert's testimony in every regard is supported by the record. On the contrary, he specifically indicated that many of the limitations he indicated were not based on the record. Finally, the medical expert did not indicate that there was objective support for fibromyalgia, but the claimant's doctors tended to assess this as an impairment continuously, including with other impairments. Therefore, the overall opinion is not persuasive, as it is not supported by the record itself, but some of the limitations are consistent with the record.

R. 28.

This analysis demonstrates that the ALJ considered both the supportability and consistency of the medical expert's opinion in deciding that it was not persuasive. For example, as to the consistency factor, the ALJ noted that the occasional reaching limitation was "not clearly seen elsewhere" in the record. *Id.* The ALJ further pointed out that Dr. Golub found no objective support for a fibromyalgia diagnosis despite multiple assessments showing this to be a continuous impairment for plaintiff. *Id.* As to the supportability factor, the ALJ pointed to the internal inconsistencies in the medical expert's testimony as well as multiple points in which he clearly stated his findings are based on his own "general experience" and "he specifically indicated that many of the limitations he indicated were not based on the record." *Id.* Accordingly, the ALJ did not err in her analysis of Dr. Golub's opinion.

### B. Playing Doctor

Plaintiff also contends that the ALJ played doctor by evaluating medical findings after the State agency review and without any medical scrutiny. Pl.'s Mot. at 10. Specifically, Plaintiff

4

argues the ALJ recognized an evidentiary gap as evidence by her scheduling a medical expert but then failed to fill this gap when she determined that medical expert's findings were "generally not persuasive." *Id.* citing R. 25, 28.

The ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). While generally discretionary "[t]he use of a medical expert can help ALJs resist the temptation to 'play doctor,' a label that usually produces a remand on judicial review, by evaluating medical evidence on his or her own." *Gebauer v. Saul*, 801 F. App'x 404, 408 (7th Cir. 2020). Once the expert's testimony is considered, "the ALJ is entitled to accept any part of an expert's testimony or reject it completely." *Serpico v. Berryhill*, No. 16-CV-7374, 2017 WL 4633214, at *7 (N.D. Ill. Oct. 16, 2017) (quoting *Glass v. Astrue*, 263 Fed. App'x. 526, 529 (7th Cir. 2008)). However, the ALJ must support her discounting of expert testimony by substantial evidence. *Id.*

In arguing that the ALJ played doctor in this case, Plaintiff relies on cases finding the ALJ's decision was flawed when the ALJ rejected *all* the available RFC determinations made by doctors or determined not to rely on any of the medical opinions in the record, leaving the record devoid of a basis to support a RFC determination. *McDavid v. Colvin*, No. 15 C 8829, 2017 WL 902877, at *5 (N.D. Ill. Mar. 7, 2017); *Daniels v. Asture*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012). Here, the ALJ did not reject all medical opinions but rather evaluated each of them as required by 20 C.F.R. § 404.1520c and simply found some to be persuasive and some to be not persuasive. R. 27-28. Accordingly, the ALJ did not erroneously play doctor.

C. **Subjective Symptom Analysis**

Finally, Plaintiff argues that the ALJ did not adequately explain her consideration of Plaintiff's subjective symptoms as required by SSR 16-3p. Pl.'s Mot. at 11-12. Specifically, Plaintiff alleges the ALJ failed to complete step 2 of the symptom evaluation which requires the ALJ "evaluate the intensity and persistence of an individual's symptoms." SSR 16-3p.

An ALJ considers several factors when assessing a claimant's subjective symptom allegations, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. Despite Plaintiff's assertion that the patently wrong standard should not apply here, "[this Court] will not overturn a credibility determination unless it is patently wrong" as long as an ALJ provides sufficient reasons supported by the record. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation. The ALJ discussed Plaintiff's testimony relating to her pain intensity, functional limitations, and treatment course. R. 22. Plaintiff stopped working when her body "just started going bad" and she had to get shoulder surgery. R. 70. Plaintiff also testified to suffering

5

from pain in her "whole body," specifically her shoulders, with no relief after her surgery. R. 82-83, 79.

The ALJ determined that while the record supported some of Plaintiff's complaints about her shoulder, the record also indicated that her symptoms were not as disabling as alleged. The ALJ relied on records showing Plaintiff's improvement following her surgery and physical therapy. R. 23. The ALJ also cited to Plaintiff's ability to "care for personal hygiene, shower[], and change[] clothes unassisted" as well as her ability to "eat[] meals on her own, drive[] a car, and [] not use an assistive device." *Id*.

Plaintiff further argues that the ALJ failed to comply with the Commissioner's policies in evaluating Plaintiff's fibromyalgia. Pl.'s Mot. at 12-13. The Commissioner's key policy regarding fibromyalgia is SSR 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012). This policy focuses primarily on how an ALJ should evaluate whether fibromyalgia is a medically determinable impairment. *See, e.g., Thomas v. Colvin*, 826 F.3d 953, 958-59 (7th Cir. 2016) (per curiam). Plaintiff's argument that the ALJ failed to cite this SSR is unconvincing as the ALJ does cite to it when making her determination of Plaintiff's severe impairments, precisely when this SSR should be referenced. *Id.* The ALJ determined not just that her fibromyalgia was not only a medically determinable impairment but also a *severe* impairment. R. 17. Once the ALJ made this determination, she was only required to apply the usual five-step process. SSR 12-2p, 2012 WL 3104869, at *5; *see Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014) (unpublished) (upholding denial of benefits when ALJ "assessed [the claimant's] functional capacity based on her limited physical capabilities" from severe impairment of fibromyalgia). Because the ALJ did all that was required under the Commissioner's policies, the Court finds no error in the ALJ's subjective symptom analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [16] is denied, and the Commissioner's motion for summary judgment [21] is granted. The Commissioner's decision is affirmed.

Date: September 23, 2024  By: *Margaret J. Schneider*
Margaret J. Schneider
United States Magistrate Judge

6